21-2647
Killoran v. Westhampton Beach UFSD

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of July, two thousand twenty-three.

PRESENT:
    MYRNA PÉREZ,
    ALISON J. NATHAN,
    MARIA ARAÚJO KAHN,
        *Circuit Judges.*

---

Christian Killoran,

    *Plaintiff-Appellant*,

Terrie Killoran, individually and on behalf of their son, A.K., a minor,

    *Plaintiff*,

    v.                      No. 21-2647

Westhampton Beach UFSD, Michael Radday, Superintendent, Suzanne Mensch, James N. Hulme, Halsey C. Stevens, Joyce L. Donneson, George R. Kast, as Board of Education Members,

    *Defendants-Appellees*.

---

| | | |
|---|---|---|
| 1 | **FOR PLAINTIFF-APPELLANT:** | CHRISTIAN KILLORAN, pro se, Killoran Law P.C., Westhampton Beach, NY. |
| | **FOR DEFENDANTS-APPELLEES:** | SCOTT J. KREPPEIN, Devitt Spellman Barrett, LLP, Smithtown, NY, Anne Leahey, Anne Leahey Law, LLC, Huntington, NY. |

Appeal from an order of the United States District Court for the Eastern District of New York (Seybert, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court is **AFFIRMED**.

This is one of three appeals related to a long-running dispute between Plaintiff-Appellant Christian Killoran ("Plaintiff") and the Westhampton Beach School District ("Westhampton") over the education of Plaintiff's son, A.K., a young man who has Down syndrome.[1]

Plaintiff, on behalf of A.K., appeals from an order entered on October 11, 2021 by the United States District Court of the Eastern District of New York (Seybert, *J.*), awarding summary judgment in favor of Defendants-Appellees, Westhampton and various Westhampton officials and members of the Westhampton Board of Education, in their individual and official capacities (collectively, "Defendants"), on Plaintiff's claims under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*[2] In awarding summary judgment, the district

---

[1] *See Killoran v. Westhampton Beach Sch. Dist.*, No. 22-204 (2d Cir.); *Killoran v. Westhampton Beach Sch. Dist.*, No. 22-1753 (2d Cir.).

[2] At the outset, we resolve Defendants' motion to strike Plaintiff's: a) notice of appeal and b) appendix, as it represents a challenge to our jurisdiction. The motion is **DENIED**. Defendants argue that the notice of appeal improperly designated an order rather than a judgment, but a notice of appeal must "designate the judgment—*or the appealable order*—from which the appeal is taken." Fed. R. App. P. 3(c)(1)(B) (emphasis added). Further, "[a]n appeal must not be dismissed . . . for failure to properly designate the judgment if the notice of appeal was filed after entry of the judgment and designates an order that merged into that judgment." Fed. R. App. P. 3(c)(7). As for the appendix, this

court upheld the decision of a State Review Officer ("SRO") that affirmed the findings of an Impartial Hearing Officer ("IHO") that Defendants provided A.K. a free appropriate public education ("FAPE") in the least restrictive environment ("LRE") for the 2018–2019 school year. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we discuss only as necessary to explain our decision to affirm.

### I. Standard of Review

We review de novo a district court's award of summary judgment in an IDEA action. *Bd. of Educ. of Yorktown Cent. Sch. Dist. v. C.S.*, 990 F.3d 152, 165 (2d Cir. 2021). "In a district court proceeding under the IDEA, the parties and the court typically style the decision as a ruling on a motion for summary judgment, but 'the procedure is in substance an appeal from an administrative determination, not a summary judgment motion.'" *Id.* (quoting *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012)). The district court must conduct "an independent review of the administrative record and make a determination based on a preponderance of the evidence," but "the role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed." *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007) (internal quotation marks omitted). Courts generally "defer to the final decision of the state authorities, even where the reviewing authority disagrees with the hearing officer," *A.C. ex rel. M.C. v. Bd. of Educ. of Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009) (internal quotation marks omitted), and "[d]eference is particularly appropriate when . . . the state hearing officers' review has been thorough and careful," *Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998).

---

Court has discretion to decline to strike a brief or appendix for failure to comply with the relevant rules. *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 133 (2d Cir. 2004). We decline to strike Plaintiff's appendix.

**II. Discussion**

**A. The IDEA**

Under the IDEA, a school district must provide services "tailored to meet the unique needs of a particular child, and . . . reasonably calculated to enable the child to receive educational benefits." *Gagliardo*, 489 F.3d at 107 (internal quotation marks omitted). To administer these services, a school district must develop an individualized education program ("IEP") each year for each student with a disability. *M.H.*, 685 F.3d at 224.

For an IEP to be adequate under the IDEA, it must be "likely to produce progress, not regression, and . . . afford[] the student with an opportunity greater than mere trivial advancement." *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 195 (2d Cir. 2005) (internal quotation marks omitted). It must also "ensure that '[t]o the maximum extent appropriate, children with disabilities . . . are educated with children who are not disabled.'" *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 151 (2d Cir. 2014) (alterations in original) (quoting 20 U.S.C. § 1412(a)(5)(A)). "In other words, the state must seek to educate each child with a disability in his or her LRE." *Id.*

"In determining whether an IEP complies with the IDEA, courts make a two-part inquiry that is, first, procedural, and second, substantive. At the first step, courts examine whether there were procedural violations of the IDEA, namely, whether the state has complied with the procedures set forth in the IDEA. . . . Courts then examine whether the IEP was substantively adequate, namely, whether it was reasonably calculated to enable the child to receive educational benefits." *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189–90 (2d Cir. 2012) (alterations, citations, and internal quotation marks omitted). Procedural inadequacies render a proposed placement violative of the IDEA when they "cumulatively result in the denial of a FAPE even if

4

the violations considered individually do not." *Id.* at 190. Substantive inadequacies automatically render a proposed placement violative of the IDEA. *Id.*

### 1. Procedural Claims

We agree with the district court and the SRO that any procedural violations in the development of the IEP did not "'impede[] the parents' opportunity to participate in the decisionmaking process regarding the provision of a [FAPE] to the parents' child,' or 'cause[] a deprivation of educational benefits.'" *T.M.*, 752 F.3d at 160 (second alteration in original) (quoting 20 U.S.C. § 1415(f)(3)(E)(ii)).

Plaintiff correctly contends that in developing the IEP, the local Committee on Special Education ("CSE") should have considered A.K.'s New York State Alternate Assessment ("NYSAA") results, and its failure to do so was a procedural violation. *See* 20 U.S.C. § 1414(c)(1)(A) (requiring "review [of] existing evaluation data on the child, including . . . State assessments"); *see also* 34 C.F.R. § 300.324(a)(1) ("In developing each child's IEP, the IEP Team must consider . . . [t]he results of the initial or most recent evaluation of the child[.]"). But the error did not deprive A.K. of a FAPE because the CSE considered other information sufficient to understand A.K.'s educational needs. *See L.O. v. N.Y.C. Dep't of Educ.*, 822 F.3d 95, 109–11 (2d Cir. 2016) (concluding that, on its own, the lack of evidence that CSE reviewed child's evaluative material, though a procedural violation, did not deny child a FAPE). Here, there is evidence that the CSE considered the testimony of the teacher who administered the NYSAA, spent significant time reviewing A.K.'s progress and goals with his teachers, service providers, and parents, and analyzed the result of other tests, including the Stanford-Binet Test, the Vineland Adaptive Behavior Scales, and the Wechsler Individual Achievement Test. Under these circumstances, we conclude that the procedural violation did not render the IEP legally inadequate.

5

|  |  |
|---|---|
| 1 | *2. Substantive Claims* |

2    We also agree with the district court and the SRO that the IEP was substantively adequate. Plaintiff objects to the fact that the IEP did not incorporate the general education curriculum, align A.K.'s goals with grade-level learning standards, or attempt to mainstream him in an in-district public school. At bottom, these arguments fail because A.K.'s IEP was "reasonably calculated to enable [A.K.] to make progress appropriate in light of [his] circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017).

Under the IDEA, a child's "educational program must be appropriately ambitious . . . ." *Id.* at 402. Plaintiff asserts that this means that A.K.'s IEP must conform to the general education curriculum and align with grade-level standards. But Plaintiff's position misunderstands the law. The IDEA requires a child's educational program to be "appropriately ambitious *in light of his circumstances*," not in conformance with general education standards. *Id.* (emphasis added); *see also id.* ("If [progressing smoothly through the regular curriculum] is not a reasonable prospect for a child, his IEP need not aim for grade-level advancement."). It is uncontested that A.K. is an alternately assessed student who has significant learning disabilities, which makes adherence with general education standards impossible. Because the IDEA requires the district to develop "an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances," but does not demand adherence with specific educational standards or curricula, we reject Plaintiff's argument that A.K.'s IEP was not "appropriately ambitious." *Id.* at 402–03.

Plaintiff also argues that the IEP's recommended placement—in a special class[3] in an out-

---

[3] Under New York law, a "[s]pecial class means a class consisting of students with disabilities who have been grouped together because of similar individual needs for the purpose of being provided specially designed instruction . . ." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1(uu).

1   of-district public school—was not the LRE.  To determine whether a student's placement is the
2   LRE, we apply a two-part test, which instructs us to consider (1) "whether education in the regular
3   classroom, with the use of supplemental aids and services, can be achieved satisfactorily for a
4   given child," and (2) "if not, then whether the school has mainstreamed the child to the maximum
5   extent appropriate." *P. ex rel. Mr. And Mrs. P. v. Newington Bd. of Educ.*, 546 F.3d 111, 120 (2d
6   Cir. 2008) (internal quotation marks omitted).

7         With respect to the first prong, we agree with the SRO's well-reasoned conclusion that
8   educating A.K. within a regular classroom could not be achieved satisfactorily even with the use
9   of supplemental aids and services.  Plaintiff does not dispute that A.K. placed at or below the first
10  percentile in reading comprehension, spelling, listening comprehension and mathematics; in the
11  low range in single-word reading and in the low average range in pseudo-word decoding; and
12  below the first percentile in speech-language skills.  In light of A.K.'s unique needs, it is clear that
13  it would not be possible to educate him in a regular classroom even with the use of supplemental
14  aids and services.  We also agree with the SRO as to the second prong because the record shows
15  that the CSE developed an IEP, with input from A.K.'s parents, that sought to mainstream A.K. to
16  the maximum extent appropriate.  Indeed, the IEP recommended that A.K. receive his academic
17  instruction and services in a special class, but that he be mainstreamed for all other non-academic
18  activities.  Accordingly, we conclude that A.K.'s IEP satisfied the IDEA's LRE requirement.

19        *3.  Other Claims*

20        Finally, we reject Plaintiff's argument that the decisions of the school district officials and
21  the underlying administrative decisions do not warrant the deference the district court gave them.
22  Plaintiff fails to provide a coherent argument for why the administrative decisions do not deserve
23  the deference that our case law instructs us to afford them.  *See Gagliardo*, 489 F.3d at 113.  Such

1   "[d]eference is particularly appropriate when, as here, the state hearing officers' review has been
2   thorough and careful."  *Walczak*, 142 F.3d at 129.  We therefore reject these claims.
3   We have considered the Plaintiff's remaining arguments and find them to be without merit.
4   Accordingly, we **AFFIRM** the order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court